**UNITED STATES of America, Appellee,**

v.

**Thomas TIERNEY, Appellant.**

**No. 24072.**

United States Court of Appeals, Ninth Circuit.

April 7, 1970.

Rehearing Denied May 27, 1970.

Alvin S. Michaelson, Los Angeles, Cal. (argued), Robert J. Vars (argued), of Vars, Reff & White, Sherman Oaks, Cal., for appellant.

Gerald F. Uleman (argued), Asst. U. S. Atty., David R. Nissen, Asst. U. S. Atty., Wm. Matthew Byrne, Jr., U. S. Atty., Los Angeles, Cal., for appellee.

Before BROWNING and HUFSTEDLER, Circuit Judges, and SOLOMON*, District Judge.

SOLOMON, District Judge:

Thomas Tierney appeals from a conviction for aiding and abetting the counterfeit of federal reserve notes. Tierney was indicted for one count of conspiring to counterfeit and for two counts of aiding and abetting the manufacture of counterfeit federal reserve notes. He pleaded not guilty to each count. His first trial ended in a mistrial when a government witness invoked the Fifth Amendment. In the second trial, the jury acquitted Tierney of the conspiracy count, but did not agree on the aiding and abetting counts. The Court declared a mistrial on these two counts.

Before a retrial on the aiding and abetting counts, Tierney filed a motion to dismiss alleging that the conspiracy acquittal collaterally estopped the government from retrying him for aiding and abetting. Tierney did not support his motion with either a summary of the evidence or a transcript of his second trial.

When the government informed Tierney that it would not call Mike Francis as a witness at the third trial, Tierney filed a motion to obtain a transcript of Francis' testimony before the grand jury. The Court denied the motion.

The government's evidence showed that Tierney was president of a mail order company, and that Tierney, Francis, and other individuals printed counterfeit notes on the company's printing press.

At the conclusion of the government's case, Tierney offered a partial transcript of his second trial, and again made a motion to dismiss on the basis of collateral estoppel. The Court denied the motion. Tierney then presented evidence that he participated in the counterfeiting only because Francis threatened to kill him. Tierney, however, did not testify. The jury found Tierney guilty of aiding and abetting.

Tierney contends:

(1) His conspiracy acquittal collaterally estopped the government from trying him for aiding and abetting.

 Conspiracy and aiding and abetting are separate offenses. Nye & Nissen v. United States, 336 U.S. 613, 69 S.Ct. 766, 93 L.Ed. 919 (1949). An acquittal for conspiracy does not preclude conviction for aiding and abetting unless the acquittal results in a finding of fact in favor of the defendant which is essential to the substantive offense. Sealfon v. United States, 332 U.S. 575, 68 S. Ct. 237, 92 L.Ed. 180 (1948).

 In order to determine what the acquitting jury found, the Court must review both the evidence and the instructions. Sealfon v. United States, *supra,* at 579, 68 S.Ct. 237. Since Tierney did not give the trial court a complete transcript of his conspiracy trial, the trial court properly refused to hold that the government was collaterally estopped.

Tierney contends that Cosgrove v. United States, 224 F.2d 146 (9th Cir. 1954), requires the Court to apply col-

---

* Honorable Gus J. Solomon, United States District Judge, District of Oregon, sitting by designation.

lateral estoppel as a matter of law. Cosgrove was acquitted of conspiring to defraud the United States and was later convicted for aiding and assisting in the preparation of false estate tax returns. On appeal, the Court held that the conspiracy acquittal collaterally estopped the government from trying Cosgrove for aiding and abetting.

*Cosgrove* is distinguishable. Cosgrove was an attorney who filed several estate tax returns after the dates on which they were due. His codefendant, an employee of the Department of Internal Revenue, falsely pre-dated the returns after they were received by the department.

Cosgrove was charged in the conspiracy counts with agreeing to file late returns pursuant to a plan to defraud the government. He was charged in the substantive counts with assisting his codefendant in defrauding the government. The evidence at both trials showed that Cosgrove and his codefendant planned to defraud the government, and that Cosgrove filed the returns to further their plan. Cosgrove could not have been convicted of either offense unless the jury found that he agreed with his codefendant to commit the substantive crime. By acquitting Cosgrove of conspiracy, the jury necessarily found that Cosgrove did not file the returns pursuant to an agreement to defraud. This finding negated Cosgrove's only possible act of aiding and abetting.

Here, Tierney admitted that he participated in the counterfeiting of federal reserve notes. His only defense was that he acted under duress. In order to convict Tierney of aiding and abetting, it was not necessary for the jury to find agreement; it was enough to find lack of duress. Since an illegal agreement was not an essential element of the government's case against Tierney on the aiding and abetting counts, collateral estoppel does not apply.

We have examined the entire transcript, and we find that evidence which was necessary to convict Tierney of conspiracy was not necessary to convict him for aiding and abetting.

(2) The Court erred in refusing to give him a copy of Francis' testimony before the grand jury.

In Dennis v. United States, 384 U.S. 855, 86 S.Ct. 1840, 16 L.Ed.2d 973 (1966), the Court held that after a government witness has testified, a defendant may discover the witness's grand jury testimony to determine whether he made statements which would allow the defendant to impeach him. Here, Francis did not testify. The government did not call Francis as a witness because Francis informed the government that if he was called he would give testimony favorable to Tierney.

Francis was a participant in the counterfeiting operation. Defense counsel talked to Francis several times. He knew that if called, Francis would give testimony favorable to Tierney. Tierney wanted to call Francis as a witness, but did not want Francis to make statements which were inconsistent with his grand jury testimony. Since Tierney did not need Francis' grand jury testimony except to permit Francis to tailor his trial testimony to avoid inconsistencies, the Court properly denied Tierney's motion.

(3) It was improper for the government's attorney to argue to the jury that Tierney's failure to call Francis as a witness meant that Francis' testimony would be unfavorable to Tierney.

Since Tierney did not raise this objection at the trial, he waived his right to raise it here. Devine v. United States, 278 F.2d 552 (9th Cir. 1960). Even if the comment was improper, it was not prejudicial because defense counsel drew the opposite inference. He argued that the government's failure to call Francis meant that Francis' testimony would be unfavorable to the government and favorable to Tierney.

(4) The Court erred in admitting testimony that Tierney manufactured counterfeit notes because he needed more money in his business.

There is no merit in this contention. Evidence of a defendant's financial condition is admissible to show his motive for committing the offense. United States v. Caci, 401 F.2d 664 (2d Cir. 1968).

 (5) The Court failed to instruct the jury that prior inconsistent statements are not evidence.

We find that the instruction given was both correct and sufficient.

 (6) The jury's verdict is not supported by sufficient evidence.

Since Tierney admitted that he participated in the counterfeiting, the only element which the government was required to prove was criminal intent. There was ample evidence from which the jury could find intent.

 (7) The United States Attorney was guilty of misconduct when he commented on Tierney's failure to take the stand.

In closing argument to the jury, the government's attorney stated:

> "Ladies and gentlemen, you will be instructed that Mike Francis was given immunity, that he was taken before a grand jury and he testified before that grand jury under a grant of immunity, and his Honor will explain to you how a grant of immunity is made; that its purpose is to remove the protection of the Fifth Amendment so that a witness can't hide behind the Fifth Amendment when he testifies, he has to testify, and because he is compelled to testify he is given immunity." (Tr. 810–811)

Tierney did not object to this comment at the trial. He contends now that the jury must have inferred from this argument that Tierney was also "hiding behind the Fifth," and the statement was therefore a comment on Tierney's failure to testify.

The test for whether there was comment on the defendant's failure to testify is, "whether the language used was manifestly intended or was of such character that a jury would naturally and neces-

sarily take it to be such comment." Hayes v. United States, 368 F.2d 814 (9th Cir. 1966). The comment here fails to meet this test.

Affirmed.